# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANTHONY M. RANDOLPH, | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | 3:24-CV-1899 (OAW) |
| | : | |
| LIEUTENANT PEARSON, | : | |
| *Defendant.* | : | |

## <u>INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A</u>

The plaintiff, Anthony Randolph, is a sentenced prisoner in the custody of the Connecticut Department of Correction ("DOC").   He asserts claims pursuant to 42 U.S.C. § 1983 against Lieutenant Pearson for alleged constitutional violations that occurred while he was housed at Corrigan Correctional Center ("CCC").   *See generally* ECF No. 1. Plaintiff does not specify whether he sues Defendant in his individual and/or official capacity, but as Defendant is a state employee, any official capacity claims for monetary damages are barred by the Eleventh Amendment, *see e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985), and any official capacity claims for injunctive relief are moot, as Plaintiff now is housed at New Haven Correctional Center, *see* ECF No. 13 (noting change of address); *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (finding that an inmate's transfer from a particular facility generally moots claims for declaratory and injunctive relief against officials at that facility).   Accordingly, any official capacity claims that might be stated would be dismissed summarily, and so the court does not address any such claims herein.   Relatedly, Plaintiff's transfer to New Haven also moots his motion for a temporary restraining order, ECF No. 2, and so that motion is denied.

1

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Upon review, the court must dismiss any complaint (or any portion thereof) which is frivolous or malicious, which fails to state a claim upon which relief may be granted, or which seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). Accordingly, the court has reviewed the complaint thoroughly and has conducted an initial review of the allegations therein.

## I.  <u>LEGAL STANDARD</u>

Section 1983 "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999).  "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this

Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991)).   This is true with respect to supervisory officials as well.   *Tangreti v. Bachman*, 983 F.3d 609, 618 (2d Cir. 2020) ("[T]here is no special rule for supervisory liability.").   Thus, in order to "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability."   *Id.* at 620.

## II.  <u>FACTUAL ALLEGATIONS</u>

The court does not exhaustively restate all the alleged facts, but includes this summary to provide a context to this initial review.   Very broadly speaking, Plaintiff asserts that Defendant singled him out for harassment without any penological goal.

Plaintiff's allegations begin on January 11, 2024, when he was assaulted by another inmate and had to be transported to a hospital.   ECF No. 1 ¶ 1.   Upon his return, he was sanctioned by being sent to restrictive housing, which Defendant oversees.   *Id.* ¶ 2–3.   Defendant met with Plaintiff and told him that he could press charges against his attacker, but that if he did, Plaintiff also would be charged.   *Id.* ¶ 4.   Plaintiff asserts that Defendant intended to discourage him from calling the police.

Plaintiff was assaulted again on November 14, 2024, but a DOC doctor who is a "close peer" of the Defendant refused to send him for necessary outside medical treatment.   *Id.* ¶ 5.   Plaintiff was sent to a hospital only after he collapsed in a stairway.

*Id.*  After having surgery on an orbital fracture, Plaintiff was returned to CCC and placed in the medical unit, which also is overseen by Defendant.  *Id.* ¶ 7.  Plaintiff asserts that he received subpar care while in the medical unit, which he appears to attribute to Defendant because a corrections officer ("CO Doe") told him Defendant would do whatever she said, and she would ensure he received no care.  *Id.* ¶ 8–9.  While still in the medical unit, Defendant saw Plaintiff and made degrading and negative comments about the assault, including: "You deserve it for writing grievances on all the nurses," and "I'm gonna make your life Hell."  *Id.* at ¶ 10.

The following day, Plaintiff was supposed to be released from the medical unit, but Defendant retained Plaintiff, apparently to harass him further.  *Id.* ¶ 11.  Defendant did not allow Plaintiff to have his personal property or legal materials while in his unit.  *Id.* ¶ 11–12.  On November 22, 2024, CO Doe falsely accused Plaintiff of threatening her while he remained in the medical unit, which resulted in his being placed in restrictive housing again.  *Id.* ¶ 13–15.  On November 25, 2024, Plaintiff signed his disciplinary tickets after other officers told him that doing so would result in his release from restrictive housing.  *Id.* at ¶ 16.  But then Defendant informed Plaintiff that he would place Plaintiff on a status that would keep Plaintiff in Defendant's unit so that Defendant could "torture" Plaintiff.  *Id.* at ¶ 17.  Plaintiff received notice of a hearing (presumably a disciplinary hearing in relation to the disciplinary tickets), but no hearing was held.  *Id.* at ¶ 18.

Also on November 25, 2024, apparently during recreation time, Plaintiff spoke to Defendant about his housing and Defendant became irate.  Defendant told Plaintiff, in

crass terms,[1] that he would not be leaving Defendant's unit.   *Id.* ¶ 19.   He also cut short Plaintiff's recreation time and while Plaintiff was being returned to his cell, he said that he was going to poison Plaintiff's food.   *Id.* ¶ 20–21.

The next day, Defendant delivered food to the inmates, which was unusual for a lieutenant, and appeared to have a specific tray for Plaintiff.   *Id.* ¶ 22–23.   He pushed the tray inside Plaintiff's cell without permitting him to inspect it, pulled Plaintiff's arm out of the cell, and sprayed chemical agent into Plaintiff's injured eye.   *Id.* ¶¶ 23–25.

Plaintiff was escorted to the shower by officers who discretely hurt his wrists and arm.   *Id.* ¶ 26.   Once there, Defendant let a female officer watch and film Plaintiff undress during a controlled strip search, explicitly insisting she stay so that she could see Plaintiff's private parts.[2]   *Id.* ¶ 27–28.   Defendant allegedly falsely accused Plaintiff of assault, but upon realizing that video footage belied the accusation, he had another officer write a disciplinary ticket.   *Id.* ¶ 29.   When Plaintiff was returned to a cell, a correctional officer twisted his arm painfully and positioned Plaintiff so that Defendant again could spray him with chemical agent.   *Id.* ¶ 31.   He did not receive medical treatment, which he believes also was Defendant's doing.   *Id.* ¶ 32.   Plaintiff was put in in-cell restraints with cuffs that were too tight and injured his wrists and ankles.   *Id.*

Plaintiff later contacted the state police to report that he feared for his life at CCC. *Id.* ¶ 33.   State police arrived on November 27, 2024, and Plaintiff explained a sex abuse

---

[1] Plaintiff alleges Defendant told him Plaintiff could "suck [Defendant's] penis" if he wanted to get out of Defendant's unit.   The court takes this as a rude way to deny Plaintiff's request, and not an actual quid-pro-quo offer.

[2] It is not clear if this is CO Doe, whom Plaintiff alleges was voyeuristic with the inmates in the medical unit. ECF No. 1 ¶ 14.

incident with a doctor and Defendant's treatment of him.   *Id.*   Plaintiff asked to press charges, but the state trooper appeared biased, which Plaintiff attributes to some coercion by Defendant.   *Id.* ¶¶ 34–36.

In his prayer for relief, Plaintiff also alleges that the conditions of Defendant's units were inhumane.   He asserts that the external door was left open throughout the winter, that inmates were refused sweaters as a form of punishment, and that inmates are denied recreation time, legal documents, and contact with their family.   *Id.* at p. 17.   He also asserts that he was not separated from an officer who he felt was a danger to him.   *Id.*

## III. <u>DISCUSSION</u>

First, the court must address a procedural issue presented in the complaint. Plaintiff only names Lieutenant Pearson as a defendant in this action, but many of the alleged actions were undertaken by other corrections officers.   Federal Rule of Civil Procedure 10(a) requires that all defendants be listed in the case caption, and moreover, it does not appear that Plaintiff intends to assert any claims against these other officers. Accordingly, the court construes the complaint to raise claims only against the named defendant, but will consider allegations of others' conduct insofar as they relate to claims against Defendant.   However, as noted supra, the mere fact that Defendant supervised other officers who allegedly violated Plaintiff's constitutional rights does not give rise to a constitutional claim against Defendant himself.   Thus, in considering other officers' conduct, the court scrutinizes whether Plaintiff plausibly has alleged that Defendant directed that conduct.

### 1. **Eighth Amendment: Conditions of Confinement**

The Eighth Amendment to the United States Constitution protects against the infliction of cruel and unusual punishment. *See* U.S. Const. amend. VIII. To state an Eighth Amendment claim for unconstitutional conditions of confinement, a plaintiff must allege facts supporting an objective element—that "the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities"—and a subjective element—that the defendants "acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (summary order) (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)) (internal quotation marks omitted). As to the objective component, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). And to satisfy the subjective component, a plaintiff must allege that the defendants knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").

### 1. *Verbal Harassment*

Verbal harassment generally does not rise to the level of a constitutional violation. *See Cole v. Fischer*, 379 F. App'x 40, 43 (2d Cir. 2010); *Cuoco v. Moritsugu,* 222 F.3d 99, 109 (2d Cir. 2000) (noting that "rudeness and name-calling does

not rise to the level of a constitutional violation.)    Courts generally dismiss Eighth Amendment claims based on prison officials' comments absent some other exacerbating circumstance.    *See, e.g., Willey v. Kirkpatrick*, 801 F.3d 51, 70 (2d Cir. 2015) (instructing the district court to consider on remand whether the plaintiff's "psychological pain and resulting suicide attempt" caused by harassment was actionable despite leaving no physical injury); *Green v. City of New York Dep't of Corr.*, No. 06CIV.4978(LTS)(KNF), 2008 WL 2485402, at *6 (S.D.N.Y. June 19, 2008) (dismissing an Eighth Amendment claim where verbal threats were "unaccompanied by any physical act or any indication that the threat will be carried out."); *Burns v. Martuscello*, 890 F.3d 77, 91 (2d Cir. 2018) (noting that "a number of courts have found an Eighth Amendment violation where a guard publicly labels an inmate as a snitch, because of the likelihood that the inmate will suffer great violence at the hands of fellow prisoners.").

The degrading and offensive comments Defendant allegedly made to Plaintiff in the medical unit do not present such exacerbating circumstances.    Defendant's threat that he would poison Plaintiff, however, coupled with Defendant's personal provision of a tray apparently specifically meant for Plaintiff certainly is enough to cause an individual in fear of imminent harm, whether or not the tray actually had been compromised. Accordingly, Plaintiff may proceed on a claim predicated upon the threat of poisoning.

### 2. *Food Contamination*

The Constitution mandates that prisoners be served "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it."    *Robles v. Coughlin*, 725

8

F.2d 12, 15 (2d Cir. 1983) (quoting *Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir.1980), cert. denied, 450 U.S. 1041 (1981)). Thus, the Eighth Amendment prohibits correctional officers from maliciously or sadistically contaminating an inmate's food or drink.   *See, e.g.*, *Robles*, 725 F.2d at 16 (finding an Eighth Amendment claim adequately pled where an inmate alleged that prison officials contaminated inmates' meals with "dust, rocks, glass and human waste"); *Carter v. Shepperson*, No. 19-CV-163, 2020 WL 6746789, at *7 (E.D.N.Y. Nov. 16, 2020) (finding allegations a correctional officer allegedly "tainted [the plaintiff's] food with bleach and feces" sufficient to carry a claim past dismissal).

Plaintiff claims Defendant threatened to poison his food, served food to inmates (which was unusual), stopped another officer from serving Plaintiff and instead served Plaintiff a specific tray of food, shoved that tray into Plaintiff's cell, and pulled Plaintiff's arm through the "trap door" of the cell before using a chemical spray on him.

Though Plaintiff suggests at least some of these events should have been captured on video, he offers no description of the food, nor that he declined to ingest it. Further, he does not claim to have suffered any ill effects therefrom. *See Stokes v. Goord*, No. 9:03-CV-1402 (LEK/DRH), 2007 WL 995624, at *4 (N.D.N.Y. Mar. 30, 2007) (dismissing Eighth Amendment claim because medical records did not indicate that the plaintiff suffered any adverse health effects from the food served to him by defendants); *Atadzhanov v. City of New York*, No. 21-CV-5098 (LJL), 2022 WL 4331304, at *5 (S.D.N.Y. Sept. 19, 2022) (stating that a plaintiff must allege that he suffered injury as result of being served contaminated food).   Taken together Plaintiff's alleged facts are insufficient to show actual contamination of his food, and so this claim must be dismissed.

9

### 3. *Sexual Harassment*

There is no bright-line test for when sexual harassment becomes a constitutional violation in the prison context.   Courts generally look to the severity and frequency of the conduct alleged to determine whether the objective element of an Eighth Amendment claim has been satisfied.   *See, e.g., Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) ("[T]here can be no doubt that severe or repetitive sexual abuse of an inmate by a prison official can be 'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation."), *Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015) (finding that one occurrence of sexual abuse may meet the objective element of the Eighth Amendment standard if it is severe enough). Where physical contact has occurred, "the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate."   *Crawford*, 796 F.3d at 257–58.

As discussed supra, verbal harassment generally is not actionable.   This remains true even when the comments made are of a sexual nature.   *See Bell v. Tromblee*, No. 9:18-CV-0814L (EK/DEP), 2018 WL 6000146, at *2–3 (N.D.N.Y. Nov. 15, 2018) (dismissing Eighth Amendment claim against correctional officer who allegedly made harassing comments about inmate's genitalia).   However, physical contact is not strictly necessary to sustain an Eighth Amendment claim.   *See White v. Doe*, No. 3:16-CV-01874 (JAM), 2021 WL 4034164, at *8 (D. Conn. Sept. 3, 2021) (finding "a prison guard's repeated acts of compelling a prisoner to engage in sex acts in a flagrantly degrading and humiliating manner" sufficient to support an Eighth Amendment claim).

10

The court finds that CO Doe's alleged voyeurism cannot be connected to Defendant, but that Defendant's alleged explicit invitation to a female correction officer to ogle Plaintiff during his strip search may be actionable.   Accordingly, the court will permit this claim to proceed for further development.

### 4. *Failure to Protect*

Plaintiff also complains that he was not separated from a certain correctional officer who Plaintiff believes could have killed him and gotten away with it.   While "[t]he Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody," *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996), Plaintiff simply has not alleged enough facts to state a plausible Eighth Amendment claim for deliberate indifference to his safety.   It is not clear what this particular officer did to cause Plaintiff to fear him, or that Defendant was aware of any threat, or that Defendant had any control over the officer in question.   Accordingly, any Eighth Amendment failure-to-protect claim is dismissed as not plausible.

### 2. Eighth Amendment: Excessive Force

In order to allege an Eighth Amendment excessive force claim, Plaintiff must show that the force employed by Defendant was not "applied in a good-faith effort to maintain or restore discipline," but rather was done "maliciously and sadistically to cause harm." *Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7–8 (1992)) (internal quotation marks omitted).   He need not show any significant injury. *Id.* "The key inquiry . . . is whether the alleged conduct involved 'unnecessary and wanton infliction of pain.'"   *Davidson v. Flynn*, 32 F.3d 27, 30 (2nd Cir. 1994) (quoting

11

*Hudson*, 503 U.S. at 8).

Here, Plaintiff alleges that Defendant sprayed him with a chemical agent and placed him in harsh restraints without penological justification, but simply to harass. These allegations are sufficient to raise an inference that Defendant subjected Plaintiff to an excessive level of force without a legitimate reason.   *See Sanchez v. Bell*, No. 3:22-CV-1087 (SVN), 2023 WL 363045, at *3 (D. Conn. Jan. 23, 2023) (permitting Eighth Amendment claim to proceed based on lieutenant's order to put the plaintiff in segregation); *Delgado v. Bezio*, 2011 WL 1842294, at *7 (S.D.N.Y. May 9, 2011) (concluding use of restraints does not violate the Eighth Amendment unless the use is "without penological justification, grossly disproportionate, or involve[s] the unnecessary and wanton infliction of pain.").

Accordingly, Plaintiff may proceed on his excessive force claim.

### 3. Fourth Amendment

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects . . . ." U.S. CONST. amend. IV.   While "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell," *Hudson v. Palmer,* 468 U.S. 517, 526 (1984), "inmates do retain a limited right to bodily privacy." *Covino v. Patrissi,* 967 F.2d 73, 78 (2d Cir.1992). Thus, in the prison context, the Fourth Amendment proscribes unreasonable strip searches.   *See Bell v. Wolfish*, 441 U.S. 520, 558 (1979); The following four factors should be considered to decide if a prison search was reasonable: "[1] the scope of the intrusion; [2] the manner in which it was conducted; [3] the justification for initiating it; and

12

[4] the place in which it was conducted." *Harris v. Miller*, 818 F.3d 49, 63 (2d Cir. 2016). (quoting *Bell*, 441 U.S. at 559) (alterations in original). A strip search violates the Fourth Amendment "if it is unrelated to any legitimate penological goal or if it is designed to intimidate, harass, or punish." *Jean-Laurent v. Wilkerson*, 438 F. Supp. 2d 318, 323 (S.D.N.Y. 2006), *aff'd*, 461 F. App'x 18 (2d Cir. 2012).

Plaintiff claims Defendant let a female officer watch and film him during a controlled strip search for the purpose of harassing Plaintiff. The court finds this sufficient at initial review to support a Fourth Amendment claim for damages against Defendant.

### 4.  Access to the Courts[3]

Plaintiff claims that Defendant refused to let him have his legal material while he was in the medical unit.   The court considers whether this allegation states a plausible violation of Plaintiff's right to court access.

It is well established that inmates have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 350 (1996).   To show a violation of this right, a plaintiff must demonstrate that "the alleged shortcomings . . . hindered his efforts to pursue a legal claim."   *Id.* at 351.   Thus, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."   *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).   Moreover, the underlying claim must be pled well enough to show that it is not frivolous.   *Id.* at 416.

---

[3] The right of access to the courts may arise under the Privileges and Immunities Clause of Article IV, the Petition Clause of the First Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendment, or the Equal Protection Clause of the Fourteenth Amendment.   *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002).

Plaintiff has not described any legal claim that has been thwarted by Defendant's actions.   Thus, any claim predicated upon his access to the courts must be dismissed.

### 5.   Fourteenth Amendment: Property Deprivation

"A prisoner may challenge the deprivation of property in a § 1983 action only if the State provides no adequate post-deprivation remedy."   *Edwards v. Erfe*, 588 Fed. App'x 79, 80 (2d. Cir. 2015).   "The existence of state remedies, therefore, determines whether a Fourteenth Amendment claim for deprivation of property without due process is cognizable in federal court."   *Conquistador v. Hannah*, No. 3:19-CV-1293 (KAD), 2019 WL 4346346, at *4 (D. Conn. Sept. 12, 2019).   The State of Connecticut provides adequate post-deprivation remedies for property deprivation under Connecticut General Statutes § 4-141, *et seq.*, which permits a prisoner to file a claim with the Connecticut Claims Commission.   As the State of Connecticut provides adequate remedies, the court dismisses any property deprivation claim as not plausible.

### 6.   Fourteenth Amendment: Procedural Due Process

Plaintiff complains that he was issued false disciplinary reports for assault and for threatening by a female correction officer and that he was retained in restrictive housing without a hearing.

Plaintiff has no constitutional right to free from false accusations of misconduct. *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) ("[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report.") However, Plaintiff may present a challenge to his disciplinary charges through a procedural due process claim.   *Jackson v. Dzurenda*, No. 11 Civ. 1668 (RNC), 2012 WL

5448330, at *2 (D. Conn. Nov. 7, 2012) ("An inmate's protection against false accusations lies in the procedural due process requirements to be applied by prison officials who conduct the disciplinary hearing." (citing *Grillo v. Coughlin*, 31 F.3d 53, 56 (claim 2d Cir.1994)).

The court analyzes a procedural due process by (1) asking whether there exists a liberty or property interest of which a person has been deprived, and (2) if so, whether the procedures followed by the State were constitutionally sufficient.    *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*) (citing *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989).   In the prison context, which involves persons whose liberty interests have already been severely restricted because of their confinement in a prison, a prisoner cannot show a deprivation of liberty interest unless he can show that he was subject to an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

The level of procedural protection required depends on the purpose of the confinement.    *Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir. 1987).   For a disciplinary proceeding, an inmate is entitled to advance written notice of the charge, adequate time to prepare a defense, a written statement of the reasons for the disciplinary action taken, and a limited opportunity to present witnesses and evidence in his defense.   *Wolff v. McDonnell*, 418 U.S. 539, 561–69 (1974).   Prison officials must show "some evidence" to support a decision to place an inmate in punitive segregation.   *Brown v. Semple*, No. 3:16-CV-376 (MPS), 2018 WL 4308564, at *12 (D. Conn. Sept. 10, 2018) (citing *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)).

15

Here, Plaintiff's allegations indicate that he received notice of the charges against him, but Defendant retained him in restrictive without a hearing on his disciplinary charges. Thus, he has adequately alleged that he was not provided all the procedural safeguards under *Wolff*. In addition, Defendant's conduct in holding Plaintiff in restrictive housing without a hearing may also violate the "some evidence" standard. *See Brown*, 2018 WL 4308564, at *12.

Accordingly, the court will permit Plaintiff to proceed on a Fourteenth Amendment procedural due process claim against Defendant for further development.

### 7. <u>First Amendment Retaliation</u>

"[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Bacon v. Phelps*, 961 F.3d 533, 542 (2d Cir. 2020) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)) (alteration in original). Courts "'must approach prisoner claims of retaliation with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" *Bacon*, 961 F.3d at 542-43 (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001)).

The filing of a prison grievance constitutes protected activity for purposes of a First Amendment retaliation claim. *See Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) ("The filing of prison grievances is a protected activity."). Plaintiff has alleged that

Defendant told him he deserved to be assaulted because of all the grievances he had submitted.   The court accepts this allegation as adequate to satisfy the first element.

An "adverse action," as required by the second element, is defined as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights."   *Gill*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)).   Plaintiff alleges that Defendant subjected him constant mistreatment, including verbal and sexual harassment, excessive force, a humiliating strip search, and continued confinement in restrictive housing without procedural safeguards. The court finds these allegations sufficient to satisfy the second element.

Finally, Plaintiff asserts that Defendant expressed some retaliatory malice toward him.   Specifically, he alleges that Defendant said Plaintiff deserved to be maltreated because of the grievances he had submitted.   This is sufficient to show a causal connection at initial review.   Accordingly, Plaintiff may proceed on his First Amendment retaliation claim.

### 8. Right to Investigation

Plaintiff complains that Defendant deprived him of, or interfered with, his ability to have the state police investigate and prosecute his assailant.   But Plaintiff does not have a constitutional right to an investigation or a prosecution (nor, indeed, does any citizen). *See Davis v. Rinaldi*, No. 3:19-cv-504 (CSH), 2019 WL 7879729, at *7 (D. Conn. Oct. 31, 2019) ("Plaintiff does not have a protected liberty interest in having correctional officials investigate his complaints, through the grievance process or otherwise."); *see also Davila v. Messier*, No. 3:13-cv-81 (SRU), 2014 WL 4638854, at *8 (D. Conn. Sept. 17, 2014)

17

("[The inmate] does not have a procedural due process interest in having his claim investigated in a manner he deems appropriate . . . ."); *Harris v. City of New York*, 2023 WL 6542019, at *2 (S.D.N.Y. 2023) ("[C]ourts have consistently declined to find that crime victims or those close to them possess a constitutional right to a police investigation into those crimes."); *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). Accordingly, Plaintiff has not stated a plausible § 1983 claim for the alleged interference with a criminal investigation or prosecution.

### 9.  Violation of DOC Policies

To the extent Plaintiff asserts that Defendant violated any DOC policies or directives, such allegations do not show a violation of an inmate's constitutional rights." *Rosa v. Cook*, 2022 WL 7517256, at *5 (D. Conn. 2022).  Accordingly, any claim predicated upon violations of DOC policies or directives is dismissed.


## IV. ORDERS

For the foregoing reasons, the court enters the following orders:

1. The case shall proceed on the following claims for damages against Defendant in his individual capacity:

    i.  An Eighth Amendment violation arising from sexual harassment;

    ii.  An Eighth Amendment violation arising from a threat of poisoning;

    iii.  An Eighth Amendment violation arising from excessive force;

18

    iv.  A Fourth Amendment violation;

    v.  A Fourteenth Amendment procedural due process violation; and

    vi.  First Amendment retaliation.

2.  All other claims, including any official capacity claims, are DISMISSED without prejudice.

3.  Plaintiff's Motion for a Temporary Restraining Order, ECF No. 2, is DENIED as moot.

4.  Plaintiff may amend the complaint on or before **December 1, 2025.  An amended complaint, if filed, will completely replace the complaint, and the court will not consider any allegations made in the original complaint in evaluating any amended complaint.**   The court will review any amended complaint to determine whether it may proceed to service of process.

5.  If Plaintiff wishes to proceed only on the claims noted above, he may file a notice on the docket saying so, at which point the case immediately will proceed to service. If nothing is filed on the docket by **December 1, 2025,** the court will presume Plaintiff wishes to proceed only on these claims.

6.  If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1 provides that he MUST notify the court.   Failure to do so can result in dismissal of the case.   Plaintiff must give notice of a new address even if he is incarcerated.   He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.   It is not enough to just put the new

address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendant or defense counsel of his new address.

7. Plaintiff shall utilize the Prisoner Electronic Filing Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. Under local court rules, discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on Defendant's counsel by regular mail.

**IT IS SO ORDERED** at Hartford, Connecticut, this 29th day of September, 2025.

_____/s/_____
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE